## D. R. BRIDGES v. MARY RUTH KYKER FRESHOUR.

Eastern Section.  July 26, 1930.

Paul Pierce, of Morristown, for appellant, Bertie L. Bridges, Admx.

O. L. McMahan and W. D. McSween, of Morristown, for appellants, Executor and heirs at law of J. M. Kyker.

Greer & Greer, of Morristown, for appellee, Mary Ruth Kyker Freshour.

SENTER, J.  The complainant filed her original bill in this cause seeking to recover against the defendant on a note dated October 31, 1919, and due and payable on or before the 31st day of October, 1922, for the principal sum of $835, and accrued interest thereon.  This note is as follows:

"White Pine, Tennessee,
"October 31, 1919.   •
"On or before the 31st day of O'ctober, 1922, I promise to pay to Mary Ruth Kyker Eight Hundred and Thirty-five Dollars with 6% interest from date till paid.
"D. R. Bridges.

Mary Ruth Kyker afterwards married a Mr. Freshour. After the suit was brought and the answer and the cross-bill was filed by the defendant, D. R. Bridges, and after his deposition in the cause was taken, he died and the suit was properly revived against his administratrix, Mrs. Bertie Bridges, and her appearance was duly entered.

The answer of defendant, D. R. Bridges, to the original bill denies that the complainant is entitled to recover against him on said note. He admits the execution of the note by his answer, but alleges that he borrowed the money represented by said note from J. M. Kyker, now deceased, and executed a trust deed on certain real property to secure the note; that the note was made payable to Mary Ruth Kyker upon the suggestion and by the direction of said J. M. Kyker, who explained to him at the time the loan was negotiated and the note and trust deed securing the same were executed, that he desired the note to be made payable to his daughter, Mary Ruth Kyker, so that he would not have to pay taxes on the note. The answer further alleges that before the note became due he negotiated a sale of the property upon which the trust deed to secure the note was given, and that the sale was on deferred payments, and that he arranged with J. M. Kyker, father of complainant, to discount the deferred payment notes and to settle the $835 note secured by the trust deed. The trust deed which he had given to secure the note had not at that time been placed to record. It is further alleged that at the time he settled and paid off the note to J. M. Kyker, that Kyker did not have the note present, but agreed to go through his papers and find the note and trust deed and mail same to him. Kyker was then sick, and before he could get the note and trust deed and mail same to him, Kyker died.

The answer also denies that the note sued on is in fact the property of the complainant; and denies that there was any consideration passing between complainant and defendant for the note, and that the note was never in fact, delivered by J. M. Kyker to the complainant, and that his payment of the note to J. M. Kyker was a payment to the real owner, and that the note was made payable to the complainant by direction of J. M. Kyker to avoid paying taxes thereon and no title to the same ever in fact vested in the complainant.

The answer is also filed as a cross-bill, and the administrator and the heirs at law of J. M. Kyker, deceased, are all made parties defendant to the cross-bill, including the complainant in the original bill. By the cross-bill the cross-complainant, D. R. Bridges, alleges that if for any reason he should be held liable on the note to the original complainant, and judgment decreed against him for the same, that he is entitled to recover against the administrator of the estate of J. M. Kyker, deceased, and the heirs at law of J. M. Kyker, any amount that may be decreed against him. The original complainant filed an answer to the cross-bill by which she asserted that she was the rightful owner of the note sued on; that her father had given to her the money which was loaned to cross-complainant and had the note made in her name as an investment for her, and that she was an innocent holder of the note, and that the note was negotiable, and denied that cross-complainant was entitled to any relief against her. An order pro confesso was taken against the administrator of the estate of J. M. Kyker, and all the other defendants, heirs at law, children of J. M. Kyker, deceased, answered the cross-bill, and denied that cross-complainant was entitled to any recovery against the estate of J. M. Kyker, or against them as heirs at law of J. M. Kyker, deceased, and alleged that the note which the original complainant had sued on was the property of J. M. Kyker, and that J. M. Kyker frequently transacted business in that way for personal reasons, and had on other occasions made loans in which some of his children were named as the payee in the notes so taken by him, and this was done for reasons personal to himself, but without any intention of making a gift of the money so loaned or the notes taken to such children. One of the sons of J. M. Kyker, deceased, J. W. Kyker, and one of the cross-defendants, makes certain allegations in the joint and several answer of the defendants to the cross-bill which purports to be matters of his personal knowledge. These allegations are to the effect that his father consulted with him and informed him of his various business transactions, and that he had personal knowledge that his father frequently did business with certain or various individuals in the name of his children, and that he has a personal recollection of the incidents of the transaction in which the note in the particular case was taken in the name of the original complainant; that the original complainant never had any interest in the funds loaned by his father to Bridges, and never had any knowledge of said transaction until after the death of the said J. M. Kyker, and that Mary Ruth Kyker was then a mere school girl, and that it was never intended by his father that she would be the beneficiary of the loan made to Bridges. He further alleges that his father made a will in which he settled all

matters and obligations as between himself and his various children, and that his said will does not disclose any obligation due to Mary Ruth Kyker as having been collected by him from said Bridges in settlement of any loan made for her use and benefit, and avers that if such had been the case some mention would have been made of it in the will.

At the hearing of the cause the Chancellor found, and so decreed, that the original complainant was the lawful owner and holder of the note sued on; that the note was negotiable and that she was an innocent holder thereof, and was entitled to recover the amount of the note and accrued interest thereon against the administratrix of the estate of D. R. Bridges, and decreed accordingly.

The Chancellor further held and decreed as follows:

"However, under the averments of the cross-bill of D. R. Bridges and the proof taken in the cause in support thereof, the court is of the opinion and finds that said D. R. Bridges paid said note, together with the interest to the said J. M. Kyker, during his lifetime, as alleged in the cross-bill, believing that he was making the payment to the true holder and owner of said note, and in this connection the court finds that there is proof in the record to sustain the contention of cross-complainant that the money loaned to said D. R. Bridges by J. M. Kyker was loaned in the name of Mary Ruth Kyker for the purpose of avoiding payment of taxes on personalty. That the courts are slow to recognize such evasions of law and in this respect the hands of J. M. Kyker were unclean, and his acts will not be recognized by this court; furthermore, his heirs at law, the beneficiaries of his estate, cannot profit by his wrongful acts in this respect. The court is therefore of the opinion that the cross-complainant is entitled to recover of the estate of J. M. Kyker, deceased, or from his lawful heirs the full amount of said indebtedness decreed herein against the said D. R. Bridges and in favor of complainant.

. . . .

"It is therefore ordered, adjudged and decreed that cross-complainant, D. R. Bridges, his administratrix and estate, have and recover of Y. J. McMahan, executor of the estate of J. M. Kyker, deceased, and/or the heirs at law of said J. M. Kyker, deceased, to-wit: J. W. Kyker, Andrew Kyker, Dollie Kyker, Ida Kyker, Mrs. Lucy Hicks, Mrs. Maude Williard, Mrs. Julia West, Mrs. Lydia Hixon, and Mrs. Jodie Hacker, and Willie Kyker, the sum of $1318 for the said note sued on in this cause, having by him been paid to J. M. Kyker, prior to his death, for which like amount execution may issue.''

The Chancellor also decreed that the cost be equally divided, one-half against the estate of D. R. Bridges, and one-half against the estate of J. M. Kyker, or his heirs at law.

From so much of the foregoing decree as adjudges the amount of the note and interest and one-half of the cost of the cause against the estate of D. R. Bridges, deceased, the administratrix of the estate of D. R. Bridges prayed and was granted an appeal to this court, which appeal has been perfected and errors assigned.

From so much of said decree as adjudges the amount decreed against the estate of D. R. Bridges against the executor and heirs at law of the estate of J. M. Kyker, deceased, the executor of J. M. Kyker, deceased, and the heirs at law of J. M. Kyker, against whom the decree was rendered in favor of the administratrix of D. B. Bridges, prayed and was granted an appeal to this court, which appeal has been perfected and errors assigned.

We will first consider and dispose of the assignments of error by appellant, Bertie L. Bridges, administratrix of the estate of D. R. Bridges, deceased. These assignments are six in number. By the first it is said the Chancellor erred in holding that the note sued on was a negotiable instrument. By the second it is said that the court erred in holding that complainant held the note as if held by an innocent purchaser for value in due course of trade. By the third it is urged that it was error of the court in not holding that J. M. Kyker, the father of the complainant, who made the loan to D. R. Bridges, was the legal owner and holder of the note sued on. By the fourth the action of the court in holding that the payment of the principal and interest of the note sued on, paid by D. R. Bridges to J. M. Kyker was an improper payment, and in holding that the payment should have been made to complainant, is challenged as error. By the fifth and sixth, it is urged that there is no evidence to support the decree against this appellant, and that the decree is contrary to the law, as to this appellant.

These several assignments will be considered and disposed of collectively. Under the first two assignments it is said that the note sued on is not a negotiable instrument, as held by the Chancellor, and that the complainant does not stand in the attitude of an innocent holder of the note sued on, and that, therefore, the payment of the note by Bridges to J. M. Kyker was a good payment and fully satisfied the note. In support of this contention it is urged that the note shows on its face that it is not payable to "order or bearer," but to Mary Ruth Kyker only, and that under the provisions of the Negotiable Instruments Law, as provided by section 3516a9, and sub-section 4 of Shannon's Code, that it is required in order to make an instrument negotiable that

it must be payable to order or bearer, and cites in support thereof the case of Weems v. Neblett, 139 Tenn., 665, wherein it is said: "A note is not negotiable when it is not payable to order or bearer." The statement contained in that case has reference to one who takes the note by endorsement of the payee, where the note does not provide that it is payable to the named payee or to the order or bearer. We do not think that this case comes within the rule or within the statute cited and relied upon. Nor do we think that this case is controlled by section 3516a60, sub-section 3, Shannon's Code. We concur in the conclusions of fact reached by the Chancellor that this note was taken in the name of complainant, made payable to her, and delivered to her. The fact that the note was purchased by her father, if it be conceded that the money loaned in procuring this note was the money of the father of complainant, and which we think is true, and the note was so purchased, and she was named as the payee in the note and held the note until it was sued upon, that she was the bearer of the note.

Under section 3516a3, Shannon's Code, under the heading of definitions and meanings of terms in the Negotiable Instruments Law, and sub-section 4 thereof, "BEARER" means the person in possession of a bill or note which is payable to bearer.

Under section 3516a17, being section 9 of chapter 94, Acts of 1899, it is provided:

"Payable to Bearer When:—The instrument is payable to bearer,

"1. When it is expressed to be so payable; or

"2. When it is payable to a person named therein, or bearer."

However, under the evidence of the complainant it appears that her father gave to her the money which was loaned by him to Bridges and the note taken in her name. There is no direct evidence to the contrary, and when it is considered that she did not receive an equal division of her father's estate with the other heirs, this is evidence strongly corroborative of her evidence on the subject. While it is true the defendant, Bridges, states in his evidence that at the time the loan was made to him and he executed the note and the trust deed, J. M. Kyker told him that he was arranging the note payable to his daughter so as to avoid the payment of taxes, yet that could have been one of his purposes, and still it could not operate to defeat the right of complainant as the owner and holder of the note. If J. M. Kyker had undertaken to have asserted ownership of this note against the claim of his daughter, the named payee, he would have been estopped if it appeared that he had had the note so taken in the name of his daughter for the purpose of defeating the payment of taxes. He would have been repelled by a court of equity because of unclean

hands. This disposes of the first, second and third assignments by this appellant.

The fourth assignment presents the question that the payment made by Bridges to J. M. Kyker from whom he obtained the loan, was a good payment and that he was warranted in paying J. M. Kyker the amount of the principal and interest of the note. This contention proceeds upon the theory that the complainant was not the bona-fide holder of the note at the time he made the payment. Bridges knew that the note was made payable to the complainant, and notwithstanding his statement to the effect that he understood that the note was taken in the name of complainant in order to defeat the payment of taxes thereon, and he was so informed by J. M. Kyker at the time the loan was made and the note executed, the fact remains that he knew that complainant was the named payee in the note. He paid the note without receiving the note and taking it up at the time he made the payment. He relied upon the promise of J. M. Kyker to mail him the note and the unrecorded trust deed. J. M. Kyker lived for nearly a year after the payment was made by Bridges to him. Bridges had ample opportunity to obtain the note or to institute the necessary proceedings to have it cancelled. If the loan had been made and was made by J. M. Kyker out of money that he had given to his daughter and the note was taken in her name, the note was her property, and the payment would have to be made to her or to her authorized agent. We are therefore of the opinion that this assignment of error must also be overruled.

This also disposes of the fifth and sixth assignments of error by this appellant.

It results that all of the assignments of error by the administratrix of D. R. Bridges are overruled, and the decree of the Chancellor as to her is affirmed.

This brings us to a consideration of the assignments of error in support of the appeal of the executor and heirs at law of J. M. Kyker, deceased.

Many of the questions made by these appellants under their assignments of error have already been discussed in disposing of the assignments of error made by appellant, Mrs. Bertie L. Bridges, administratrix. By the first two assignments it is said that there is no evidence to support the decree rendered against the defendant, D. R. Bridges, and that the evidence preponderates against the finding of the court in favor of complainant and against D. R. Bridges, or his estate. These two assignments go upon the theory that if the complainant was not entitled to recover against Bridges, that Bridges, or his administratrix, would have no right of recovery against these appellants. For the reasons hereinbefore set

forth in disposing of the assignments of error of appellant, Mrs. Bertie Bridges, Admx., these assignments are accordingly overruled.

By the fifth and sixth assignments it is also urged by these appellants that the instrument was not negotiable, and was not held by complainant in due course; and that the court erred in holding that the note sued upon was not primarily an obligation due to J. M. Kyker and not to Mary Ruth Kyker. The questions made by these two assignments have also been considered and disposed of in overruling similar assignments made by appellant, Mrs. Bertie L. Bridges, Admx.

The third and fourth assignments by these appellants state that there is no evidence to support the decree against these appellants and in favor of the administratrix of the estate of D. R. Bridges. There can be no doubt under the facts as disclosed by the evidence but that D. R. Bridges did pay the amount of this note to J. M. Kyker, and this fact is not disputed. If J. M. Kyker wrongfully received and retained the money paid to him by Bridges and failed to make the proper application of the payment to the note for which it was intended, we think that Bridges, or the administratrix of his estate, is entitled to recover against the estate of J. M. Kyker the amount adjudged against him in favor of complainant. This would be a proper charge against his estate, and if the personal estate of J. M. Kyker, deceased, has been distributed under his will, which appears from the evidence of J. W. Kyker, and they have received from the estate sums in excess of the amount of the payment made by Bridges to J. M. Kyker, and the accrued interest thereon, we think the Chancellor made the proper decree in the cause.

In addition to what we have heretofore said with reference to the facts as disclosed by the record, we will add that J. M. Kyker, deceased, expected to make a proper division of his estate among his children. His estate consisted largely of money and notes, and we think the record discloses that he was desirous of making some advance settlements on his children for the purpose of being relieved of paying taxes on notes, and that in pursuance of this intention when he made this loan to Bridges he had the note made payable to his daughter, the complainant. It appears that there were three different sets of children, and the complainant was one of the last set. J. M. Kyker was a man of considerable means, and at the time of his death had about $18,000 in cash and notes. It appears that complainant was one of thirteen children, and that all of the personal estate of J. M. Kyker was bequeathed to the nine children composing the first two sets of children by former marriages. Complainant states that she only received about six

acres of land. She testified that she was present when her father made the loan to Bridges, or at least a part of the time, and heard him tell Bridges that he wanted the note made payable to her; and she further testified on that subject that she did not hear her father make any mention to Bridges of his desire to have the note so made for the purpose of avoiding taxes, and that she had never at any time heard her father make any mention of any such purpose. She testified that the transaction was not concluded at the house, but that when it was concluded the note and trust deed were mailed to her, and that she received the note and trust deed, and that she had had the note in possession ever since, kept it a part of the time in her mother's trunk at the home, and later kept it in her own trunk. She testified that the note had been delivered to her and that her father never at any time made any request of her that she turn the note over to him, and that she never had any knowledge that Bridges had made any claim that the note had been paid to her father until some time after her father's death, and shortly before the note was due, she placed it with her attorney for collection. She files as an exhibit to her evidence a letter written by her attorney to Bridges, notifying Bridges when the note would be due and asking if he would be ready to pay it. Bridges wrote a letter in reply, stating that he had paid the note to J. M. Kyker before it was due, and at the time Kyker discounted the notes representing the deferred payments on his property which he had sold on terms. The amount of this note and the interest was taken out by J. M. Kyker in the settlement.

The complainant testified that she had no knowledge or information from any source that Bridges had paid the note to her father; that she never authorized her father to collect the note; that her father never requested the note from her, and that at no time was he in possession of the note after it was executed.

Under these facts we are of the opinion that the transaction constituted a gift inter vivos, and that the subject of the gift, the note made payable to her by his direction, was delivered to her as the donee; that the note was at no time thereafter in the custody or under the control of J. M. Kyker, the donor, nor did he at any time claim any right to the note against complainant; that it was at all times in her actual possession from the time it was originally delivered to her.

Under the facts of the record we find no error in the decree of the Chancellor. All assignments of error are overruled, and the decree of the Chancellor is affirmed.

However, it appears that when the decree was pronounced by the Chancellor in this cause, the complainant entered a motion that she be subrogated to the rights of the administratrix of the estate

of D. R. Bridges, against the executor and heirs at law of J. M. Kyker, deceased, and to the end that she could recover directly against the estate and heirs at law of J. M. Kyker, deceased. The Chancellor declined to allow this motion upon the grounds that there were no sufficient allegations to entitle her to the right of subrogation.

While we concur in this conclusion reached by the Chancellor, yet it appears that Mrs. Bertie L. Bridges, as the administratrix of the estate of D. R. Bridges, has prosecuted this appeal in forma pauperis, and has made affidavit that because of insufficient assets belonging to the estate with which to pay the cost that she is unable to make an appeal bond. In this situation, we are of the opinion that the cause should be remanded to the Chancery Court of Hamblen county to the end that the amount of the judgment decreed in favor of the administratrix of D. R. Bridges against the estate and heirs at law of J. M. Kyker, may be applied, if necessary, to the payment of the judgment decreed in this cause in favor of complainant. By this course, in the event complainant could not realize on the judgment against the estate of D. R. Bridges, except by impounding or attaching the judgment decreed in favor of the administratrix of D. R. Bridges against the estate and heirs at law of J. M. Kyker, deceased, it would save additional proceedings and costs.

The cost of this appeal will be paid one-half by appellants, the executor and heirs at law of J. M. Kyker, deceased, and sureties on their appeal bond, and one-half against the appellant, Mrs. Bertie L. Bridges, Administratrix on the estate of D. R. Bridges.

Owen and Heiskell, JJ., concur.